UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:12-cr-00026-JPH-TAB ) |
| BYRON PIERSON, | ) ) ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

On June 12, 2020, Mr. Pierson moved to dismiss the government's supervised release revocation petition. Dkt. [109]. For the reasons below, that motion is **DENIED.**

**I.
Facts and Background**

On April 15, 2018, while on two-year term of supervised released from a federal conviction in Case No. 12-cr-00026, state officials arrested Mr. Pierson and charged him with, among other things, unlawful possession of a firearm by a recent felon. *See State of Indiana v. Pierson*, 49G05-1804-F4-012670 (Ind. Super. Ct. Apr. 2018).

On April 19, 2018 the U.S. Probation Office filed a petition to revoke Mr. Pierson's supervised release. Dkt. 66. The petition alleged that Mr. Pierson violated conditions of his supervised release including that Mr. Pierson "shall not commit another federal, state, or local crime" and that he "shall not possess a firearm." *Id.*

1

On May 7, 2018, Magistrate Judge Lynch granted a joint motion to hold the revocation hearing in abeyance pending resolution of Mr. Pierson's new charges and ordered Mr. Pierson detained. Dkts. 72, 113. Less than two weeks later, on May 18, 2018, a federal grand jury indicted Mr. Pierson for violating 18 U.S.C. § 922(g)(1) based on the same conduct underlying the state offense and supervised release violation. Dkt. 1*[1].

On May 24, 2018, at his initial appearance in the 2018 case, Magistrate Judge Dinsmore, referencing the order of detention entered by Magistrate Judge Lynch in the 2012 case, ordered Mr. Pierson detained. Dkt. 13*.

On June 6, 2018, the state charges against Mr. Pierson based on the April 18, 2018 arrest were dismissed in lieu of federal prosecution based on the same facts. *See State of Indiana v. Pierson*, 49G05-1804-F4-012670.

Mr. Pierson filed motions to continue the trial date in the 2018 case on June 21, 2018; September 19, 2018; November 21, 2018; January 10, 2019; May 7, 2019; August 5, 2019, dkts. 18*, 20*, 22*, 23*, 25*, 26*, 27*, 28*, 29*, 32*, 34*, 35*.

On August 13, 2019, Mr. Pierson signed a plea agreement that resolved both the felon-in-possession charge in the 2018 case and the supervised release violation in the 2012 case. Dkt. 74. In the plea agreement, Mr. Pierson "agree[d] to admit" as true the allegations in the petition to revoke his supervised release. *Id.*

---

[1] * The asterisk reflects that the docket entry appears in the 2018, rather than 2012, case.

On October 13, 2019, after the plea agreement was filed but before a hearing on the petition to enter a guilty plea, Mr. Pierson's two-year term of supervised release concluded.  *See* dkt. 66.

On May 29, 2020, more than nine months after Mr. Pierson filed the plea agreement with the Court, Mr. Pierson moved to withdraw his plea agreement. Dkt. 75*.  The Court granted Mr. Pierson's motion on June 4, 2020.  Dkt. 80*.

Between the date the petition to enter a guilty plea and plea agreement was filed and the date he withdrew the plea agreement, Mr. Pierson chose to replace his counsel, dkts. 79, 81, 83, 85, and decided to represent himself in the supervised release revocation proceedings, dkt. 101.

On June 8, 2020, four days after granting Mr. Pierson's motion to withdraw his plea agreement, the District Judge entered an order designating the Magistrate Judge to conduct a hearing on the petition to revoke supervised release.  Dkt. 108.

On June 12, 2020, Mr. Pierson filed a *pro se* motion to dismiss the government's supervised release petition, dkt. 109, which the parties fully briefed by July 13, 2020, dkt. 114.

On June 22, 2020, a superseding indictment was filed in the 2018 case based on the same facts that underlie the alleged supervised release violations. Dkts. 81*, 66.

## II.
## Discussion

Mr. Pierson bases his motion to dismiss the supervised release petition on two grounds.  Dkt. 109.  First, he alleges that the delay in holding his

3

supervised release revocation hearing violates his right to due process under the Fifth Amendment. *Id.* at 4. Second, Mr. Pierson argues that the Court now lacks jurisdiction to revoke his supervised release. *Id.* at 5–6.

### A. Due Process

Mr. Pierson contends that the government has violated his Fifth Amendment guarantee to a "reasonably prompt revocation hearing." *Id.* at 4. Mr. Pierson was arrested on May 2, 2018, dkt. 70, so the delay amounts to approximately 28 months. The government argues that this delay was not unreasonable because it resulted from Mr. Pierson's "own actions" and Mr. Pierson has shown no prejudice resulting from the delay. Dkt. 111 at 1.

The parties agree on applying the framework set forth in *Barker v. Wingo*, 407 U.S. 514 (1972) and adapted by the Seventh Circuit in *United States v. Scott*, 850 F.2d 316, 317 (7th Cir. 1988). *See* dkts. 111 at 5, 109 at 9. To assess the "impact of delay on the substantial rights" of a defendant, the Seventh Circuit has directed courts to consider: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, (4) any prejudice to the defendant, and (5) the reason why the defendant was in custody. *United States v. Rasmussen*, 881 F.2d 395, 398 (7th Cir. 1989). The "starting point is the length of the delay" from the arrest date until the date of the revocation hearing. *Id.* If that time period "gives [the Court] pause," then it must give "demanding" scrutiny to the "remaining factors." *Id.*

As noted above, the delay has been over 28 months to date. The government concedes that this likely does "not satisfy the legal requirement

4

that a revocation hearing must occur within a 'reasonable time.'" Dkt. 111 at 5. That does not end the inquiry, however, because the Court must consider the "remaining factors, which "necessarily . . . overlap." *Rasmussen*, 881 F.2d at 398–99.

The record shows that Mr. Pierson is responsible for most of the delay. As noted above, the same conduct forms the basis for the petition to revoke supervised release in the 2012 case and the indictment in the 2018 case. Dkts. 81*, 66. Starting with the motion filed on June 21, 2018, Mr. Pierson filed six motions to continue the trial date. Dkts. 18*, 22*, 25*, 27*, 29*, 34*. In none of these motions did Mr. Pierson assert his right to a reasonably prompt revocation hearing or even raise the issue. *See id.* He did not raise the issue during either of the status conferences held on May 17, 2019 and August 12, 2019. Dkt. 32*, 37*, 58*, 61*.

In August 2019, after receiving five continuances of the trial date and two months before his term of supervised release expired, Mr. Pierson signed a plea agreement resolving both the 2018 and 2012 cases and had it filed with the Court. Dkt. 74. In that agreement, Mr. Pierson admitted to violating the conditions of his supervised release, including possession of a firearm. *Id.* The plea agreement resolved the supervised release violation, thus eliminating the need for a hearing.

Mr. Pierson did not assert this right or raise the issue during the January 16, 2020 *ex parte* hearing on his request for new counsel. Dkt. 49*. Mr. Pierson also did not assert this right or raise the issue during the May 14,

2020 *Faretta* hearing, even though the petition to revoke supervised release was discussed in detail during the colloquy. Dkt. 78* at 4, 6, 11, 17–19, 21–23. Before the Court granted Mr. Pierson's motion to withdraw the plea agreement on June 4, 2020, dkt. 80*, there was no reason to believe that a hearing on the supervised release violation would be needed.

On June 12, 2020, Mr. Pierson filed a motion to revoke the detention order and to dismiss the supervised release violation. Dkt. 109. That motion was fully briefed on July 13, 2020. Dkt. 114. On July 22, 2020, a superseding indictment was filed in the 2018 case based on the same facts that underlie the alleged supervised release violations. *See* dkts. 81*, 66. Both Mr. Pierson's motion and the superseding indictment are related to adjudication of the supervised release violation.

Mr. Pierson claims he has suffered the three types of prejudice described in *Barker*: "(i) . . . oppressive pretrial incarceration; (ii) . . . anxiety and concern of the accused; and (iii) the possibility that the defense will be impaired." *Barker*, 407 U.S. at 530. Of these, "the most serious is the last." *Id.* Here, Mr. Pierson alleges that the delay has caused him "severe depression," for which he takes "anti-depression medication." Dkt. 118 at 6. "Unfortunately, anxiety and anguish are an inevitable result of . . . imprisonment." *Scott*, 850 F.2d at 321. Thus, the Seventh Circuit has held that a defendant must "offer evidence of anxiety beyond that which reasonably corresponds with a criminal . . . imprisonment" before a delay can qualify as prejudicial in a "constitutionally significant sense," *id.*, which Mr. Pierson has not done. Mr. Pierson also

6

contends that the delay has "prejudiced [him] by substantially limiting [his] ability to defend [himself] against the charge that conditions of [his] supervised release were violated," dkt. 109 at 4, but he does not explain how the delay has harmed his defense. As a result, Mr. Pierson has not established prejudice from the delay.

In sum, Mr. Pierson caused most of the delay, did not assert his right to a revocation proceeding before June 2020, has not established any prejudice resulting from the delay, and is in custody for a new federal criminal charge based on the conduct underlying his alleged supervised release violation. Given these facts, Mr. Pierson's due process rights have not been violated by the delay. *See, e.g., United States v. Intini*, 18 F. App'x 411, 418 (7th Cir. 2001) (holding that five-year delay in probation revocation proceedings did not violate due process).

### B. Jurisdiction

Mr. Pierson also contends that the Court must dismiss the petition because the intervening period has extended beyond what is "reasonably necessary for adjudication." Dkt. 109 at 5–6. Mr. Pierson's two-year term of supervised release ended on October 13, 2019, *see* dkt. 66, so it has been 11 months since his term of supervised release expired.

"The power of the court to revoke a term of supervised release . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant . . . has been issued on the basis

7

of . . . a violation." 18 U.S.C. § 3583(i).  As a result, a "district court loses jurisdiction to revoke a defendant's supervised-release term after it expires unless the following two conditions are met: (1) the court has issued a warrant or summons by the last day of defendant's term; and (2) the court's delay in revoking the defendant's supervised release was 'reasonably necessary' to adjudicate matters related to violated conditions."  *United States v. Cross*, 664 F. App'x 570, 573 (7th Cir. 2016).  The " meaning of 'reasonably necessary' is 'relatively elastic' and depends on the 'legitimate interests of the defendant and the government.'"  *Cross*, 664 F. App'x at 573 (citing *United States v. Ramos*, 401 F.3d 111, 118 (2d Cir. 2005)).

There is no dispute that the Court issued a warrant within the term of Mr. Pierson's supervised release, dkts. 66, 67, so the only issue is whether there was unreasonable delay in conducting a hearing on the supervised release violation.

As discussed above, before Mr. Pierson withdrew his plea agreement on June 4, 2020, dkt. 80*, there was no reason to believe that a hearing on the supervised release violation would be needed.  As a result, the entire period before June 4, 2020 was "reasonably necessary" under 18 U.S.C. § 3583(i).  While three months have passed since the Court permitted Mr. Pierson to withdraw that plea agreement, this period of delay does not deprive the Court of jurisdiction over the supervised release violation.  The Seventh Circuit recently held that a seven-month delay after a supervised release term's expiration did not withdraw jurisdiction from the district court under 18 U.S.C.

8

§ 3583(i).  *United States v. Greco*, 938 F.3d 891, 894 (7th Cir. 2019).  There, the defendant's supervised release expired on April 12, 2018 but "[b]ecause of several delays, the court did not hold a revocation hearing until November."  *Id.* Although the defendant did not challenge his supervised release revocation on "reasonably necessary" grounds, the Court had no trouble concluding that the district court "had jurisdiction" despite the seven-month delay.  *Id.*; *see also Cross*, 664 F. App'x at 573 (affirming district court's finding that a three-month delay was reasonably necessary during defendant's hospitalization).

While a hearing on the alleged supervised release violation could have been held sooner, the delay does not go beyond what is "reasonably necessary for the adjudication" under 18 U.S.C. § 3583(i).

### III.
### Conclusion

For the reasons above, the Court **DENIES** Mr. Pierson's motion to dismiss the government's supervised release petition.  Dkt. [109].  The Magistrate Judge **SHALL PROMPTLY SCHEDULE** a hearing on the supervised release violation.

**SO ORDERED.**

Date: 9/14/2020

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

9

Distribution:

M. Kendra Klump
UNITED STATES ATTORNEY'S OFFICE
kendra.klump@usdoj.gov

Dominic David Martin
INDIANA FEDERAL COMMUNITY DEFENDERS
dominic_d_martin@fd.org

United States Probation Office

Byron Pierson
Oldham County Detention Center
3405 West Highway 146
LaGrange, KY 40031